The STATE of Ohio, Appellee,

v.

MITCHELL, Appellant.

[Cite as *State v. Mitchell* (1993), 87 Ohio App.3d 484.]

Court of Appeals of Ohio,
Ross County.

No. 1834.

Decided April 15, 1993.

*William H. Allyn,* Assistant Prosecuting Attorney, for appellee.

*John B. Street,* for appellant.

*Per Curiam.*

This is an appeal from a judgment of conviction and sentence entered by the Ross County Common Pleas Court. The court found Derek Mitchell, defendant below and appellant herein, guilty of drug abuse in violation of R.C. 2925.11.

Appellant assigns the following error:

"The arresting officer did not have probable cause to search the defendant. Evidence obtained as a result of the search should have been suppressed by the trial court."

On August 1, 1991, at approximately 6:50 p.m., Ohio State Highway Patrol Trooper Steve Rosta observed a damaged brown automobile traveling on U.S. Route 23. Trooper Rosta followed the automobile for about one mile, pacing its speed at sixty-three miles per hour. Trooper Rosta stopped the vehicle for traveling at an excessive speed.

Immediately after Trooper Rosta stopped the vehicle, the driver, appellant's brother Kevin Mitchell, stepped out of the driver's side door and met Trooper Rosta behind the vehicle. Trooper Rosta testified that Kevin appeared nervous as he paced around the vehicle. Because Kevin's actions aroused Trooper Rosta's suspicions, Trooper Rosta walked to the vehicle and looked inside. He observed appellant sitting in the front passenger seat, and another person sitting in the rear seat. After walking to the car window, Trooper Rosta detected the odor of beer in the vehicle. The officer received no response when he asked the occupants if they had any beer. He also asked if they had any weapons in the vehicle. The passengers advised Trooper Rosta that they did not have any weapons. While asking these questions, Trooper Rosta noticed appellant's high-top tennis shoes were "splayed" wide open.

Trooper Rosta radioed the patrol post to check the status of Kevin's driver's license and he found that Kevin's license was under suspension. Trooper Rosta then radioed his supervisor for assistance.

Sergeant Gibson testified that when he arrived on the scene, Trooper Rosta was questioning Kevin about drugs in the vehicle. After some hesitation, Kevin admitted he had concealed some cocaine under the front seat of the vehicle. Trooper Rosta arrested Kevin for driving with a suspended license. Prior to the search of the vehicle, Trooper Rosta asked the passengers to exit the vehicle and to stand behind the patrol car with Sergeant Gibson. During Trooper Rosta's search of the vehicle, Sergeant Gibson began searching Kevin and found a small bag of crack cocaine in his left sock.

Trooper Rosta's search of the vehicle failed to reveal any drugs. After the search, Trooper Rosta went back behind the patrol car. At that point, he noticed that appellant's high-top tennis shoes were now tightly laced. Sergeant Gibson consequently asked appellant to remove his shoes. During the suppression hearing, Sergeant Gibson testified on cross-examination as follows:

"MR. STREET: When Trooper Rosta completed the search of the car, did he come back to where you were?

"SGT. GIBSON: Yes, he did.

"MR. STREET: All right. And at that point you searched Derek Mitchell?

"SGT. GIBSON: At that point when Trooper Rosta returned I searched the other two.

"MR. STREET: Which one did you search?

"SGT. GIBSON: I don't recall. The main thing I recall is the first thing was asking Derek to take his shoes off.

"MR. STREET: Did you ask him to do that?

"SGT. GIBSON: As I remember, I did, yes.

"MR. STREET: When you asked him to take his shoes off, Derek Mitchell had not been arrested, had he?

"SGT. GIBSON: No, he had not.

"MR. STREET: He'd not told you there was anything in this [sic] shoes?

"SGT. GIBSON: No, he had not.

"MR. STREET: You weren't asking him to take his shoes off to check for weapons, were you?

"SGT. GIBSON: Well, I could.

"MR. STREET: But you weren't?

"SGT. GIBSON: That's part of a pat-down.

"MR. STREET: But you didn't do a pat-down search of him, did you?

"SGT. GIBSON: Before we put them in the cars, we did. We patted—

"MR. STREET: When you asked him to take—

"SGT. GIBSON: Down all three.

"MR. STREET: When you asked him to take his shoes off, you hadn't done a pat-down search, had you?

"SGT. GIBSON: No.

"MR. STREET: You weren't concerned that he had weapons on his person, were you?

"SGT. GIBSON: Yeah, it depends. I was concerned enough before I put them in the car. At that time, I felt secure.

"MR. STREET: Derek Mitchell had not told you he had drugs in his shoes, had he?

"SGT. GIBSON: No.

"MR. STREET: Kevin Mitchell hadn't told you that he had drugs in his shoes, had he?

"SGT. GIBSON: Not in his shoes, no.

"MR. STREET: That Derek had drugs in his shoes.

"SGT. GIBSON: No.

"MR. STREET: Ronald Colbert hadn't told you that Derek Mitchell had drugs in his shoes, had he?

"SGT. GIBSON: No.

"MR. STREET: You'd not seen Derek Mitchell make any movement towards his shoes, to put anything in his shoes, had you?

"SGT. GIBSON: No.

"MR. STREET: Do you recall testifying at the preliminary hearing in this matter four months ago?

"SGT. GIBSON: Yes.

"MR. STREET: One of the questions I asked you at that preliminary hearing was and why did you ask him, meaning Derek Mitchell, to take his shoes off, and your answer was to check to see if there was anything contraband in them. Isn't that the reason you asked him to take asked him to take his shoes off?

"SGT. GIBSON: Partly, yes.

"MR. STREET: That's what you told me back at the preliminary hearing on August 12th, isn't it?

"SGT. GIBSON: Correct.

"MR. STREET: And you hadn't seen him put anything in his shoe. Trooper Rosta didn't tell you he'd seen him put anything in his shoe, did he?

"SGT. GIBSON: No."

Sergeant Gibson found two bags in the shoes containing crack cocaine. Trooper Rosta arrested appellant and charged him with drug abuse, in violation of R.C. 2925.11.

On September 20, 1991, the Ross County Grand Jury indicted appellant. Appellant pleaded not guilty and requested a jury trial. Appellant filed a motion to suppress the cocaine seized by Troopers Rosta and Gibson.

At the motion hearing, Trooper Rosta testified that although Kevin had acted suspiciously, appellant had not acted strangely or suspiciously at any time. Trooper Rosta stated that his suspicions were aroused by (1) the fact that appellant's shoes were tightly tied after he left the vehicle; and (2) the fact that appellant was in proximity to the place Kevin said the drugs were located. Trooper Rosta testified that he told Sergeant Gibson that the drugs would probably be found in appellant's shoes. Sergeant Gibson testified that he asked appellant to remove his shoes not as part of a search for weapons, but as part of a search for evidence. At the close of the hearing, the court denied appellant's motion to suppress evidence.

Subsequently, appellant entered a no contest plea and the trial court found appellant guilty of drug abuse. The court sentenced appellant to six months in prison, suspended the prison sentence, and placed appellant on probation for one year. Appellant filed a timely notice of appeal.

■ In his sole assignment of error, appellant asserts that the warrantless search of his tennis shoes violated the Fourth Amendment prohibition against unreasonable searches and seizures. Appellant contends that none of the exceptions to the warrant requirement is applicable. Appellant argues that his mere proximity to the arrested individual, Kevin, did not provide the officers with a valid constitutional basis to search him.

Appellee, in response, argues that the officers searched appellant under exigent circumstances in order to preserve evidence that appellant could have easily destroyed or consumed. Appellee further argues that the circumstances gave the officers probable cause to believe appellant had drugs in his shoes.

In the case *sub judice*, we must decide the propriety of the warrantless search of appellant's shoes. The Fourth Amendment to the United States Constitution provides:

**490**

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Fourth Amendment protects against unreasonable government intrusions into areas where legitimate expectations of privacy exist. *United States v. Chadwick* (1977), 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538. " * * * The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.' " *Mincey v. Arizona* (1978), 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290; *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; *South Dakota v. Opperman* (1976), 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000; *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 25 OBR 360, 496 N.E.2d 925; and *State v. Tincher* (1988), 47 Ohio App.3d 188, 548 N.E.2d 251. The touchstone of a Fourth Amendment analysis of the lawfulness of a search is whether a person has a constitutionally protected reasonable expectation of privacy. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576; *California v. Ciraolo* (1986), 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210. If evidence is derived in violation of the Fourth Amendment, exclusion of the evidence is required. *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 16 O.O.2d 384.

In the instant case, in order for the warrantless search of appellant's shoes to be valid, the search must fall within one of the narrow and specifically delineated exceptions to the warrant requirement. We note that those seeking an exemption from the warrant requirement bear the burden of showing that one of the recognized exceptions to the warrant requirement is applicable. See *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889.

During the proceedings below, the trial court overruled appellant's motion to suppress evidence. When considering a motion to suppress evidence, the trial court assumes the role of the trier of facts, and is in the best position to resolve questions of fact and evaluate the credibility of witnesses. *State v. Warren* (Aug. 12, 1991), Hocking App. No. 90CA7, unreported, 1991 WL 156521. A reviewing court should not disturb the trial court's findings on the issue of credibility. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as

true, we must independently determine as a matter of law, without deference to the trial court's conclusions, whether they meet the applicable legal standards.

The United States Supreme Court has recognized an exception to the warrant requirement for the search of vehicles because the mobility of vehicles makes obtaining a warrant impracticable and because people have a lesser expectation of privacy in a vehicle. See *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543; *Chambers v. Maroney* (1970), 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419; *Cardwell v. Lewis* (1974), 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325, 69 O.O.2d 69; *Arkansas v. Sanders* (1979), 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235; and *United States v. Ross* (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572. When a police officer has probable cause to believe a vehicle contains evidence of a crime, the officer may conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages, that could logically conceal the objects of the search. *Ross, supra;* *State v. Welch* (1985), 18 Ohio St.3d 88, 18 OBR 124, 480 N.E.2d 384; and *Tincher, supra.*

In the case *sub judice,* Kevin Mitchell, the driver of the vehicle, told Trooper Rosta that he had concealed cocaine under the front seat of the vehicle. Thus, the investigating officers had reasonably trustworthy information that the vehicle contained evidence of a crime. The issue in the instant case, however, does not involve the propriety of the vehicle search. Rather, the issue we must decide is whether the warrantless search of the vehicle may be extended to allow a search of the vehicle's occupants.

██ A person's mere proximity to others independently suspected of criminal activity does not, without more, provide a sufficient constitutional basis to search that person. In *Ybarra v. Illinois* (1979), 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245, the court emphasized that probable cause must exist with respect to each person searched:

"It is true that the police possessed a warrant based on probable cause to search the tavern in which Ybarra happened to be at the time the warrant was executed. But, a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. *Sibron v. New York,* 392 U.S. 40, 62–63, 20 L.Ed.2d 917 [934–935], 88 S.Ct. 1889 [1902–1903] 44 O.O.2d 402 [412–413]. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be. The Fourth and Fourteenth Amendments protect the 'legitimate expectations of privacy' of persons, not places. See *Rakas v. Illinois,* 439 U.S.

128, 138–143, 148–149, 58 L.Ed.2d 387 [397–401, 404–405], 99 S.Ct. 421 [427–430, 433]; *Katz v. United States*, 389 U.S. 347, 351–352, 19 L.Ed.2d 576 [581–582], 88 S.Ct. 507 [511–512]." (Footnote omitted.)

Thus, the fact that officers have a valid constitutional basis to search one person does not, standing alone, justify the search of others in the area. The Fourth Amendment and the Fourteenth Amendment protect the " 'legitimate expectations of privacy' of persons, not places." *Id.;* see, also, *Rakas v. Illinois* (1978), 439 U.S. 128, 138–143, 148–149, 99 S.Ct. 421, 427–430, 433, 58 L.Ed.2d 387, 397–401; *Katz v. United States* (1967), 389 U.S. 347, 351–352, 88 S.Ct. 507, 511–512, 19 L.Ed.2d 576, 581–582.

In *United States v. Di Re* (1948), 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210, the court discussed the propriety of a search of Di Re, an occupant of a vehicle, where the search resulted in the discovery of a large quantity of counterfeit gasoline rationing coupons concealed in Di Re's clothing. The court noted at 586–587, 68 S.Ct. at 224–225, 92 L.Ed. at 216:

"Assuming, however, without deciding, that there was reasonable cause for searching the car, did it confer an incidental right to search Di Re? It is admitted by the Government that there is no authority to that effect, either in the statute or in precedent decision of this Court, but we are asked to extend the assumed right of car search to include the person of occupants because 'common sense demands that such right exist in a case such as this where the contraband sought is a small article which could easily be concealed on the person.'

" * * *

"We see no ground for expanding the ruling in the *Carroll* case to justify this arrest and search as incident to the search of a car. We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled."

In *United States v. Berryhill* (C.A.9, 1971), 445 F.2d 1189, 1193, the court wrote:

"In addition to the vehicular search, we are here concerned with the right to search another occupant of the vehicle, Mrs. Clarice Berryhill, who was clutching the handbag in which the stolen mail matter described in Counts VI and XIII was found. The fact that envelopes were observed protruding from the top of the paper sack might arguably have supported the reasonableness of the search, but the arresting officer described it as purely a search for weapons. And the lawful arrest of Berryhill cannot legalize a personal search of a companion for evidence against her simply because she was there. *United States v. Di Re* (1948), 332 U.S. 581 [68 S.Ct. 222, 92 L.Ed. 210]."

In *State v. Davis* (Dec. 23, 1983), Cuyahoga App. No. 46920, unreported, 1983 WL 2935, the court considered a situation similar to the case at bar. In *Davis,* the police arrested the driver of a vehicle for driving under the influence of drugs and for driving under suspension. The arresting officer asked the defendant, a passenger in the vehicle, to get into the police cruiser. The officer conducted a pat-down search of the defendant and found a plastic bag containing pills in his right suit coat pocket. The court wrote:

"The defendant was not under arrest when he was frisked, so the search incident to a lawful arrest exception is inapplicable. And the fact that Moton [the driver of the vehicle] was arrested cannot justify a full-blown search of the defendant merely because he was present and a companion of Moton. *United States v. Di Re* (1948), 332 U.S. 581, 593–594 [68 S.Ct. 222, 228, 92 L.Ed. 210, 219–220]; cf. *Ybarra v. Illinois* (1979), 444 U.S. 85, 91, 93–95 [100 S.Ct. 338, 342, 343–344, 62 L.Ed.2d 238, 246–247].

"At issue is the right of the police to perform a limited frisk of the defendant for weapons to protect themselves from physical attack. The constitutional permissibility of that right, notwithstanding the absence of a warrant or probable cause to arrest was decided in *Terry v. Ohio* (1968), 392 U.S. 1, 25–27 [88 S.Ct. 1868, 1882–1883, 20 L.Ed.2d 889, 908–909, 44 O.O.2d 383, 395–396]. A federal court has subsequently extended the right to pat-down, to the companion of a lawfully arrested occupant of a car. * * *

" * * *

"Thus, the search for safety's sake may not be used to justify a search for contraband.

"Neither the plastic bag's hardness, shape, size, or density as revealed by the record and evidence presented on appeal could have reasonably led to a belief by the officer that it was a weapon of any sort. Removal of the plastic bag constituted an unreasonable expansion of the weapons frisk into a search for evidence." See, also, *State v. Kidd* (Sept. 28, 1989), Franklin App. No. 88AP–1053, unreported, 1989 WL 112347.

We recognize, however, that the facts in *Davis* are not identical to the facts in the instant case. In the case at bar, the officer learned that the vehicle occupied by appellant contained contraband.

After a review of the record and the authorities cited, we find that appellant's mere presence in the vehicle did not justify the warrantless search of his shoes. *Di Re; Berryhill;* and *Davis, supra.* Further, the officers' mere suspicion that appellant concealed contraband in his shoes did not rise to the level necessary to satisfy the Fourth Amendment standard. Sergeant Gibson testified during the suppression hearing that he did not see appellant make any movement toward his

shoes or put anything in his shoes. We cannot conclude that appellant concealed contraband in his shoes based upon the fact that appellant tied his shoe laces.

One commentator has noted that the rule prohibiting the search of occupants of a vehicle has been questioned. In 3 LaFave, Search and Seizure (2 Ed.1987) 74–76, Section 7.2(e), the following is noted with respect to searches of persons within a vehicle:

"(e) Search of persons within vehicle. Assuming a basis for a warrantless search of a vehicle under the *Carroll–Chambers* rule, but the absence of grounds to arrest some occupant of the car, may that occupant also be searched if the items sought are of such a nature that they could be concealed on his person? No, the Supreme Court held in *United States v. Di Re:* 'The Government says it would not contend that, armed with a search warrant for a residence only, it could search all persons found in it. But an occupant of a house could be used to conceal this contraband on his person quite as readily as can an occupant of a car. Necessity, an argument advanced in support of this search, would seem as strong a reason for searching guests of a house for which a search warrant had issued as for search of guests in a car for which none had been issued. By a parity of reasoning with that on which the Government disclaims the right to search occupants of a house, we suppose the Government would not contend that if it had a valid search warrant for the car only it could search the occupants as an incident to its execution. How then could we say that the right to search a car without a warrant confers greater latitude to search occupants than a search by warrant would permit?' However, the Model Code of Pre–Arraignment Procedure provides otherwise:

"If the officer does not find the things subject to seizure by his search of the vehicle, and if (a) the things subject to seizure are of such a size and nature that they could be concealed on the person, and (b) the officer has reason to suspect that one or more of the occupants of the vehicle may have the things subject to seizure so concealed, the officer may search the suspected occupants * * *.

"The Reporters state a persuasive case in favor of this provision:

" 'There is considerable basis for criticism of [the *Di Re* ] reasoning, which takes analogy from a search of fixed premises under a search warrant to an emergency search without a warrant, justified as "reasonable" by the mobile character of the thing to be searched. Under the rejuvenescent *Trupiano* rule and the thrust of the *Chimel* case, one might reasonably say that if the officers want to search people as well as premises, they should get a warrant that says so. But this will not do for emergency searches of vehicles, and it seems absurd to say that the occupants can take the narcotics out of the glove compartment and stuff them in their pockets and drive happily away after the vehicle has been fruitlessly searched.' " (Footnotes omitted.)

Additionally, we find the search of appellant's shoes cannot be justified under the exception to the warrant requirement for limited pat-down searches for weapons. In *Terry v. Ohio* (1968), 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889, 907–908, 44 O.O.2d 383, 394–395, the court wrote:

"When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."

In order to perform a limited pat-down search for weapons, an officer need not be absolutely certain that the individual is armed; rather, the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Terry, supra; Beck v. Ohio* (1964), 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142, 31 O.O.2d 80; *State v. Freeman* (1980), 64 Ohio St.2d 291, 18 O.O.3d 472, 414 N.E.2d 1044. The search for weapons must be limited in scope to the protective purpose. *Adams v. Williams* (1972), 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612. Circumstances surrounding the arrest of a suspect may also justify a pat-down search of the suspect's companions. See *Berryhill; Kidd; Davis, supra;* and *State v. Woyan* (May 6, 1980), Franklin App. No. 80AP–21, unreported.

In the case *sub judice,* we find the exception to the warrant requirement for a limited pat-down search for weapons is not applicable. The investigating officers did not present sufficient articulable facts indicating that a reasonably prudent person would believe appellant was armed and dangerous. Sergeant Gibson testified that he conducted the search of appellant in an effort to find contraband, not to find weapons. The officers did not limit the scope of their search to a protective purpose.

We note the issues raised in the case *sub judice* presented a very close and difficult question. However, after a review of the record and the arguments of counsel, we find no valid constitutional basis to support the warrantless search of appellant's shoes. Accordingly, based upon the foregoing reasons, we sustain appellant's assignment of error and reverse the trial court's judgment overruling appellant's motion to suppress evidence.

*Judgment reversed.*

GREY and PETER B. ABELE, JJ., concur.

HARSHA, P.J., dissents.

HARSHA, Presiding Judge, dissenting.

Given the specific and narrow facts of this case, I dissent. The Fourth Amendment protects against unreasonable searches and seizures. Given the

existence of probable cause, including the driver's admission concerning the existence and location of the drugs and appellant's access to them, the destructible nature of the evidence involved, and the greater degree of intrusion involved in detaining the appellant until a warrant could be obtained, the rationale set forth in *Cupp v. Murphy* (1973), 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900, as followed in *State v. Wamsley* (May 8, 1989), Madison App. No. CA88–11–026, unreported, 1989 WL 47883, convinces me that the search was reasonable within the meaning of the Fourth Amendment. I am quick to acknowledge, however, that neither proximity nor probable cause standing alone or together is normally sufficient to overcome the warrant requirement for searches of the person.