Jarrod M. STONE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9603–CR–126.

Court of Appeals of Indiana.

Oct. 22, 1996.

Timothy J. Burns, Indianapolis, for Appellant–Defendant.

Pamela Carter, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant-Appellant Jarrod M. Stone (Stone) appeals the adverse judgment on his motion to suppress evidence.

We affirm.

### ISSUES

Stone presents the following issues for review:

1. Whether the court erred in denying defendant's motion to suppress evidence when the evidence was seized as a result of a patdown search in which the defendant was requested to remove his shoes.

2. Whether the finding of the court was sustained by sufficient evidence.

### FACTS AND PROCEDURAL HISTORY

On June 22, 1995, Officer Chester Gooch (Officer Gooch) was patrolling on 33rd Street and Elmira Avenue in Indianapolis, Indiana. He observed a man, Byrd, attempting to wave down passing vehicles. Officer Gooch was familiar with the area as one of high drug trafficking. He also believed that Byrd's activities resembled a common method of selling drugs. Officer Gooch called for back-up and then approached Byrd in order to investigate. Stone was a passenger in the car which Byrd was leaning into at the time. Officer Gooch performed a patdown of Byrd while the other three men were still in the car. He found a loaded semi-automatic pistol on Byrd along with cocaine and marijuana. This strengthened Officer Gooch's suspicion that he had interrupted a drug transaction and he was concerned that there may be other weapons involved. He asked the men to exit the car, and he and his partner proceeded to pat them down for weapons.

Stone was wearing untied high top athletic shoes which were removed as a part of the patdown so that they could also be checked for weapons. In one of Stone's shoes Officer Gooch observed two marijuana cigars. This led to a more thorough search incident to his arrest revealing a small amount of crack cocaine in one of Stone's pants pockets.

Stone was arrested and charged with possession of cocaine, a class D felony[1], and possession of marijuana, a class A misdemeanor.[2] Stone filed a motion to suppress evidence which was denied subsequent to a hearing held August 8, 1995. At trial on November 14, 1995, Officer Gooch testified to the above facts. Stone objected to admission of the evidence, renewing his motion to suppress evidence and preserving it for appeal. The evidence was admitted, and Stone was then convicted on both counts.

## DISCUSSION AND DECISION

### I. Motion to Suppress

Stone challenges the trial court's denial of his motion to suppress evidence which was attained from a stop and frisk where he was required to remove his shoe, alleging this was an illegal search and seizure. The standard of review for the admissibility of evidence is well established. "The trial court has broad discretion in ruling on the admissibility of evidence. We will not disturb its decision absent a showing of abuse of that discretion." *Moore v. State*, 637 N.E.2d 816, 818 (Ind.Ct.App.1994), *trans. denied, cert. denied,* —— U.S. ——, 115 S.Ct. 1132, 130 L.Ed.2d 1093 (1995) (citing *Harless v. State*, 577 N.E.2d 245, 247 (1991)).

■ Within the Bill of Rights, Indiana's Constitution contains a strict prohibition against unreasonable search and seizure. "The right of the people to be secure in their persons, ... against unreasonable search or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized." Ind.

Const. art I, § 11. Although the Constitution requires a warrant in order to search a person, there are some well established exceptions to the warrant requirement. A search and seizure is *per se* unreasonable if it is conducted outside of the judicial system unless the State can show that the search falls within such an exception. *In the Matter of C.D.T. v. State*, 653 N.E.2d 1041, 1044 (Ind.Ct.App.1995).

■ The exception used in the present situation is a *Terry*[3] stop. Pursuant to *Terry*, an officer may stop a person on the street to investigate the situation and even frisk or patdown their outer clothing for weapons, even though there may be no probable cause for an arrest. 392 U.S. at 30, 88 S.Ct. at 1884. The public interest served by the *Terry* exception to the warrant requirement is to allow the police officer to assure him or herself that the suspect is not armed with a weapon that could unexpectedly be used against the officer or a bystander. *Id.* at 23, 88 S.Ct. at 1881. *Terry* also sets forth the standard used to determine whether it is appropriate for the officer to conduct a stop and frisk of the suspect:

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.... And in determining whether the officer acted reasonably in such circumstances, due weight must be given, ... to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Id.* at 27, 88 S.Ct. at 1883.

The court in *Terry* emphasized that the important considerations in determining the reasonableness of a *Terry* stop are: the intrusion is limited in scope to effect its purpose; the purpose of the stop and frisk is to discover hidden instruments that may be used to assault the officer, or others, in the least intrusive means possible; and the reasonableness of the officer's fear of assault is

---

1. Ind.Code 35–48–4–6 (1995 Supp.).

2. Ind.Code 35–48–4–11 (1995 Supp.).

3. *Terry v. State*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

determined by the surrounding circumstances and the officer's experiences. *Id.* at 29–30, 88 S.Ct. at 1883–84.

There are three particular stages of Officer Gooch's investigation which are challenged by Stone: the basis of the initial investigation, the basis of the removal of Stone from the car in order to conduct a patdown, and the scope of the patdown.

■ Beginning with Officer Gooch's initial investigation of the situation, this court has recently held that such an investigation is appropriate in *C.D.T.*, 653 N.E.2d 1041. The court held that the officer had sufficient grounds to investigate a situation where a person was leaning into a stopped car and the police had received reports of open-air drug dealing in the area. *Id.* That situation is analogous to the one here where a person was waving down cars and then leaning into them, a common form of drug dealing in the area. Therefore, Officer Gooch's investigation of the situation was appropriate.

■ Next, Stone was subjected to a patdown. *Terry* confirmed the police's ability to investigate a suspicious situation and, if needed, to patdown those involved to insure everyone's safety. The officer does not need to be absolutely certain that the suspect is armed when conducting a search. The validity of the officer's search is based on whether "a reasonably prudent man in the same circumstances would be warranted in the belief that his safety or that of others is in danger." *Drake v. State*, 655 N.E.2d 574, 575 (Ind.Ct. App.1995) (citing *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883).

Here, Officer Gooch suspected a drug transaction was underway and was investigating the situation when he discovered a weapon on Byrd. This led him to investigate the situation further, and therefore he needed to insure his safety while doing so. This is the response of a reasonable and prudent person in the given situation. The patdown of Stone is valid under *Terry* and within an accepted exception to the constitutional prohibition against unreasonable search and seizure.

■ Finally, we reach the scope of the patdown. In the present case the officer's actions went further than the commonly accepted patdown of the outer clothing for weapons. In an extension of his search for weapons he asked Stone to remove his shoes, and this is when the evidence was discovered.

Other states which have addressed this issue have found that a patdown which includes removing a shoe or looking in a boot is legal if the officer conducted the search with the appropriate intentions, to reveal weapons. *Hodges v. State*, 678 So.2d 1049 (Ala. 1996); *Thompson v. Florida*, 551 So.2d 1248 (Fla.Dist.Ct.App.1989); *State v. Mitchell*, 87 Ohio App.3d 484, 622 N.E.2d 680 (1993); *Commonwealth v. Borges*, 395 Mass. 788, 482 N.E.2d 314 (1985).

In *Hodges*, the court allowed an officer to lift the suspect's pant legs to look into the suspect's hard leather boots. The officer's motivation in looking into his boots was to find weapons and not drugs. The court found that the officer's fear, that the suspect could have easily hidden a weapon there, was reasonable. Because the officer was conducting a valid search for weapons, the drugs found were admissible at trial. 678 So.2d 1049 (Ala.1996). The Alabama court recognized that certain footwear is conducive to hiding weapons and therefore within the scope of a frisk, and that lifting the pant legs to check inside the boots was not overly intrusive. *Id.*

The Florida court in *Thompson* also faced a situation where the suspect was asked to remove his shoes prior to arrest. In considering the validity of the search the court based it's decision on the intent of the officer. "An officer may not continue to search the inside of a suspect's SHOES in the hopes of finding contraband unless the officer reasonably believes the object concealed might be a weapon." *Thompson*, 551 So.2d at 1249 (emphasis in original). The court did not find removing the shoes overly intrusive if it is done for the proper purpose.

Although in *Mitchell* the officer's search of the suspect's shoes was found to exceed the limits of a valid patdown, the court's decision turned on the reasonableness of the officer's action and not on the nature of the shoes themselves. 622 N.E.2d 680. Relying on

*Terry,* the Ohio court focused on the reasonableness of the officer's belief that the situation was dangerous and that the search be limited to fulfill its purpose, which was to recover weapons and secure the safety of those involved. *Id.,* at 687.

Similarly, in *Borges,* the Massachusetts court found that the officer exceeded the scope of an investigatory stop when the officer asked the suspect to remove his shoes. The court reasoned that the request was not designed to ensure the officer's safety and that there was no evidence that the officers feared for their safety. 482 N.E.2d at 318. In sharp contrast, the facts in this case could allow the trial court to determine that Officer Gooch did check the shoes for safety purposes and had reason to be concerned for his safety after finding the loaded pistol on Byrd.

Although Indiana has not yet addressed whether removing a shoe is within the scope of the *Terry* stop, we have addressed the scope of the *Terry* stop in another light, the "plain feel" doctrine.[4] That line of cases deals with an officer who felt and seized drugs on the suspect during a patdown for weapons. *See C.D.T.,* 653 N.E.2d 1041; *Shinault v. State,* 668 N.E.2d 274 (Ind.Ct.App. 1996); *Drake,* 655 N.E.2d 574. The determining factor throughout those cases is the officer's impression at that moment. If the officer felt there was a possibility that the object found during the patdown was a weapon but it turned out to be drugs, then the seizure was acceptable. *Shinault,* 668 N.E.2d at 274; *Drake,* 655 N.E.2d at 576–577. It was also acceptable if the officer was looking for weapons during the patdown and knew immediately upon touch that the object was contraband. *Drake,* 655 N.E.2d at 575–576 (citing *Dickerson,* 508 U.S. 366, 113 S.Ct. 2130). However it was not acceptable for the officer to use the patdown for weapons as a cover for a general investigative search of the suspect. *C.D.T.,* 653 N.E.2d at 1047–1048.

■ The "plain feel" cases are relevant to show that the most important factors in discussing the acceptable scope of a patdown are the officer's intentions and concerns. Here, viewing the evidence in the light most favorable to the verdict, Officer Gooch was clearly concerned about hidden weapons, and this is why he ordered the removal of Stone's shoes during the patdown search for weapons. In conducting a *Terry* stop the officer is to use the judgment of a reasonable and prudent person in the given situation to determine the extensiveness of the search for weapons needed to make the situation safe without being overly intrusive to the subject's person. *Terry,* 392 U.S. at 22–27, 88 S.Ct. at 1880–83. Officer Gooch asked Stone to remove his shoe solely for the purpose to ensure the safety of the situation. It is not unreasonable for a reasonable and prudent person to suspect a weapon could be hidden in an untied high top athletic shoe. Requesting the removal of a shoe is not overly intrusive given a situation where the officer sincerely fears a hidden weapon might be concealed. The nature of determining the appropriate scope of police action in any given situation is extremely fact sensitive. Given the above standard of review for appeals involving the admissibility of evidence, which gives the trial court a great deal of discretion, the drugs found when Stone removed his shoe pursuant to the patdown are admissible.

## II. Sufficiency of the Evidence

■ The applicable standard of review for an appeal based on a sufficiency of the evidence challenge gives great deference to the trier of fact. We neither reweigh the evidence nor determine the credibility of witnesses. We examine only the evidence most favorable to the State along with all reasonable inferences to be drawn therefrom. If there exists substantive evidence of probative value to establish every material element of an offense beyond a reasonable doubt, we will not disturb the conviction. *Moore,* 637 N.E.2d at 821 (citing *Geans v. State,* 623 N.E.2d 435, 437 (Ind.Ct.App.1993)).

---

4. *C.D.T.,* 653 N.E.2d at 1045, (citing *Minnesota v. Dickerson,* 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)).

■ Indiana Code 35–48–4–6 states: "A person who, without a valid prescription or order of a practitioner acting in the course of his professional practice, knowingly or intentionally possesses cocaine ... commits possession of cocaine, ... a Class D felony." The record reveals that all of the elements of this crime have been shown by the State.

The elements for possession of marijuana are found in Indiana Code 35–48–4–11. "A person who: (1) knowingly or intentionally possesses (pure or unadulterated) marijuana, ... commits possession of marijuana, ... a Class A misdemeanor." Ind.Code 35–48–4–11. These elements have also been shown by the state in the evidence presented.

With the admission of the evidence found as a result of the patdown, including the evidence found in Stone's shoe, the State has produced sufficient evidence to establish·the material elements for possession of cocaine and for possession of marijuana.

### CONCLUSION

Based on the foregoing, we conclude that the investigative stop and patdown were reasonable under *Terry*. Furthermore, we find that extending the scope of the patdown to include removal of the suspect's shoes for the sole purpose to look for weapons was also reasonable under *Terry*. Accordingly, we affirm the denial of Stone's motion to suppress.

There was sufficient evidence to uphold both the conviction for possession of marijuana and for possession of cocaine. The convictions are affirmed.

Affirmed.

BARTEAU, J., concurs.

DARDEN, J., dissents with separate opinion.

DARDEN, Judge, dissenting.

I respectfully dissent with the majority in this case. I, too, am concerned about the safety of police officers when they conduct investigatory stops of suspects who might possess dangerous weapons. However, the majority's holding in this case would seem to allow police officers to virtually cease conducting limited "pat downs" and instead permits them to order a strip down search under the guise of officer safety.

A closer view of the facts in this case reveals that Byrd was standing outside the car in which Stone was the passenger. Even though Officer Gooch saw Byrd leaning into the car, and perhaps speaking to the occupants, his attention was drawn to Byrd primarily because it appeared that the manner in which he was attempting to get the attention of other cars traveling down the street was indicative of drug trafficking. Officer Gooch called for back-up and, upon its arrival, he approached Byrd and the occupants of the car. A pat down search of Byrd revealed a gun. Therefore, Stone and the driver were ordered to get out of the car. A pat down search of the outer clothing of Stone and the driver revealed no weapon; however, Officer Gooch, apparently still fearing for his safety even with the arrival of backup, had Stone remove his shoes to further search for weapons. The record is devoid of any evidence that Officer Gooch or any other officer attempted to conduct a pat down search around the area of Stone's shoes for weapons but, instead, had Stone remove his shoes. Surely, the State is not asking us to believe that Stone was walking on top of weapons that were concealed under his feet and on top of the inside soles of his shoes.

At the time Officer Gooch had Stone remove his shoes, he or his fellow police officers had already conducted a limited pat down search of Stone's outer clothing and had not detected a weapon or found any incriminating evidence. Officer Gooch's fear for the safety of himself and the other officers could have been put to rest simply by conducting a pat down search around the area of Stone's high tops for a weapon. Rather, the pat down search for a weapon eventually turned into a full blown search for narcotics. Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution provide that citizens shall not be subjected to unreasonable searches and seizures which, in my opinion, is what occurred in this case.

The underlying theme of the four cases from other jurisdictions which are discussed

by the majority is the notion of the reasonableness of the officers' actions under the circumstances of those cases. Although allowing for the possibility of expanding a valid pat down search of a suspect to include removal of his or her shoes when the police officer reasonably believes the suspect may be concealing a weapon, the courts in *Thompson*, 551 So.2d 1248, *Mitchell*, 622 N.E.2d 680, and *Borges*, 482 N.E.2d 314, nevertheless found that the searches of the suspects' shoes were unreasonable under the circumstances. In like manner, I cannot agree with the majority's conclusion here that "[i]t is not unreasonable for a reasonable and prudent person to suspect a weapon could be hidden in an untied high top athletic shoe." This may be true; however I believe the officers' safety could have been ensured by means other than complete removal of Stone's shoes. As I noted above, Officer Gooch did not first conduct a pat down search of the area in and around Stone's high tops. Thus, I believe it was unreasonable under these circumstances for Officer Gooch to instruct Stone to remove his shoes.

I disapprove the expansion of the *Terry* stop in this particular case. Clearly, this was not a case involving a pat down for weapons, but a case wherein law enforcement was permitted to conduct an unlimited search outside the judicial system, that is without the benefit of probable cause, a judicial search warrant, or even the articulation of specific facts, which would justify the intrusive invasion of citizen's rights as is guaranteed by both the United States and the Indiana Constitutions.

I would find the trial court erred by not granting Stone's motion to suppress and, accordingly, I would reverse Stone's conviction and sentence.