The STATE of Ohio, Appellee,

v.

MILLER, Appellant.

[Cite as *State v. Miller* (1997), 117 Ohio App.3d 750.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 96–L–055.

Decided Jan. 21, 1997.

*Charles E. Coulson,* Lake County Prosecuting Attorney, *Ariana E. Tarighati* and *Taylir K. Linden,* Assistant Prosecuting Attorneys, for appellee.

*R. Paul LaPlante,* Lake County Public Defender, and *Mark Gardner,* Assistant Public Defender, for appellant.

---

CHRISTLEY, Presiding Judge.

The instant appeal has been taken from a final judgment of the Lake County Court of Common Pleas. Appellant, James V. Miller, seeks the reversal of his conviction on one count of drug abuse, in violation of R.C. 2925.11(A). As the basis for this appeal, appellant maintains that the trial court erred in denying his

motion to suppress certain evidence obtained during an investigative stop of a motor vehicle.

The sole charge against appellant was predicated upon the following facts. During the early morning hours of May 19, 1995, Patrolman John Levicki and several other officers of the Painesville Police Department conducted a surveillance of a single-family dwelling located on Argonne Drive. At 11:00 p.m., the beginning of their shift that night, the officers had been instructed to "be aware" of certain drug activity that allegedly was taking place in that area of the city. Based upon information they had received from confidential informants and other sources, and which they had reason to believe was reliable, the officers decided to concentrate their efforts upon the Argonne Drive residence.

Patrolman Levicki parked his police cruiser approximately one hundred yards from the residence in question. From this position, he was able to see the driveway of the residence through binoculars. However, he was unable to see any of the doors to the residence.

During the first thirty minutes of the surveillance, Patrolman Levicki saw a number of vehicles pull into the driveway of the residence. In each instance, a person would exit the vehicle and walk toward the residence. Within a few minutes, the person would come back to the vehicle, which would then drive away. Because this type of behavior was consistent with the purchase and possible consumption of drugs, the officers decided to initiate stops of the vehicles once they had driven away from the residence. The first stop which the officers made resulted in the confiscation of a crack pipe.

Ten to fifteen minutes subsequent to the first stop, Patrolman Levicki saw a dark-colored Cadillac pull into the driveway behind two other vehicles. He watched appellant exit the Cadillac from the front passenger seat and walk toward the residence. Consistent with the behavior of the previously observed individuals, appellant returned to the front passenger seat of the Cadillac within a few minutes. The Cadillac then drove away from the residence.

After the Cadillac had turned onto another street and had traveled approximately a quarter of a mile, Patrolman Levicki and a second officer stopped the vehicle. Upon exiting his police cruiser and approaching the Cadillac, Patrolman Levicki stood by the passenger side of the vehicle while the second officer spoke to the driver of the vehicle.

From his vantage point, Patrolman Levicki could see that appellant, who was seated in the front passenger seat, had an aluminum pop can in his hands. Patrolman Levicki further saw that appellant was "fidgeting" in his seat and shuffling the can from hand to hand. Appellant then appeared to be trying to place the can between the seat and the door, but apparently could not. After

about fifteen seconds, Patrolman Levicki saw appellant place the can between his legs and then shove the can between the crack of the split-bench seat.

Once the initial conversation between the second officer and the driver had ended, Patrolman Levicki, who had been observing only appellant until that time, asked appellant to exit the vehicle and stand in front of it. He then questioned appellant as to why he and his companions in the vehicle had stopped at the Argonne Drive residence. While this conversation was taking place, the second officer was questioning the driver about the same subject matter.

At the conclusion of both conversations, the officers compared notes and found that the two accounts were inconsistent. The second officer then asked the driver to allow the officers to search the inside of the vehicle. In response, the driver agreed to the search.

As part of the search, Patrolman Levicki specifically told a third officer to look at the pop can which appellant had hidden. After removing the can from between the seats, the third officer, at Patrolman's Levicki's request, held it upside down and shook it. A small rock of crack cocaine then fell from the can.

Based upon the foregoing incident, appellant was indicted on one charge of drug abuse under R.C. 2925.11(A). Upon entering an initial plea of not guilty, appellant moved the trial court to suppress the seized evidence. In relation to the initial stop of the vehicle, appellant argued that Patrolman Levicki did not have a reasonable suspicion of any criminal activity on the part of appellant or the other two persons in the vehicle. As to the search of the pop can, he asserted that the officers had acted unreasonably in relying upon the driver's consent to support the search of the can because Patrolman Levicki had known that only appellant had performed acts of possession over the can.[1]

An evidentiary hearing was held on appellant's motion. In testifying on behalf of the state, Patrolman Levicki gave a detailed description of the events which led to the stop and to the search of the can. In addition, Patrolman Levicki testified as to the following: (1) he had been a police officer for approximately four years prior to this incident and had conducted surveillances of suspected crack houses on many occasions; (2) prior to this incident, he was aware that the department had received numerous complaints from various residents of the area concerning possible drug activity at this residence; (3) some two to three weeks before, he had spoken to the owner of the house and the owner's father; (4) both men had indicated to him that the house had been taken over by drug dealers who had forced the son to cooperate; (5) he knew that a number of drug-related arrests had been made stemming from this residence over the prior six months; and (6)

---

1. There was no issue raised as to the retrieval of the can; rather, the assignment of error in this appeal focused on the retrieval of the *contents* of the can.

based upon his professional experience, he had felt that the actions of appellant had been indicative of drug activity.

Approximately one month after the evidentiary hearing, the trial court rendered a judgment in which it denied appellant's motion to suppress. As to the initial stop of the Cadillac, the court found that the stop had been predicated upon a reasonable suspicion of criminal behavior. As to the search of the can, the court found that the facts of the case supported a reasonable belief on the part of the officers that the driver of the vehicle had the "authority" to consent to the search of the can.

Upon the denial of his motion, appellant changed his plea from not guilty to one of no contest. After accepting this new plea and finding appellant guilty of the charged offense, the trial court sentenced appellant to six months in a state penitentiary and sixty days in a county jail, but suspended the six-month term. The court also placed him on probation for three years.

In appealing this conviction, appellant has raised the following as error:

"The trial court erred to the prejudice of the defendant-appellant in overruling his motion to suppress any and all evidence obtained by the Painesville Police Department."

Under this sole assignment, appellant seeks to challenge the propriety of both parts of the trial court's decision concerning the constitutionality of the actions of the officers during the investigative stop. First, he contends that the court erred in finding that the stop itself had been predicated upon a reasonable suspicion of criminal behavior on his part. Essentially, he argues that a reasonable suspicion did not exist because Patrolman Levicki never saw him purchase drugs or engage in any other illegal activity.

As a preliminary matter, this court notes that, in ruling upon the merits of appellant's motion to suppress, the trial court assumed the role of the trier of fact. *State v. Kingery* (Mar. 18, 1992), Ross App. No. 1792, unreported, 1992 WL 56769. Thus, in reviewing the propriety of the trial court's decision, this court is required to accept its factual findings if they are supported by competent, credible evidence in the record. *State v. Yemma* (Aug. 9, 1996), Portage App. No. 95–P–0156, unreported, 1996 WL 495076. However, as to the legal issue of whether those facts supported the conclusion that a reasonable suspicion of criminal activity had existed, we are required to make a *de novo* determination without any deference to the trial court's holding. *Id.*

As was first articulated in the seminal case of *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, a police officer is allowed to briefly stop an individual when the officer reasonably suspects that the individual is involved, or

has been involved, in criminal behavior. In order for such a stop to be constitutionally permissible, the officer's level of suspicion does not have to be as great as is necessary to support a finding of probable cause; instead, the officer must have only a "reasonable suspicion" of criminal behavior. *United States v. Montoya de Hernandez* (1985), 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381.

In defining the "reasonable suspicion" standard, the United States Supreme Court has indicated that an inarticulate hunch is insufficient to justify an investigatory stop. See *Brown v. Texas* (1979), 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357. Instead, the stop must be based upon some objective justification, *i.e.*, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences, from those facts, reasonably warrant the intrusion." *Terry* at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

In applying the foregoing standard, the Supreme Court of Ohio has held that the reasonableness of the officer's actions must be viewed in light of the totality of the surrounding circumstances. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489. Moreover, the Supreme Court has stated that deference must be given to the officer's training and experience. *State v. Andrews* (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271.

In reviewing circumstances similar to this, the Supreme Court of Ohio has stated that an area's reputation for drug activity is one factor which can be considered in determining whether a reasonable suspicion existed.

In *Bobo*, the Supreme Court held that an investigatory stop had been warranted under the following facts: (1) the defendant's vehicle was parked in an area of heavy drug activity; (2) the stop occurred at night, when a weapon could be easily hidden; (3) the officer who executed the stop had twenty years of experience, had made numerous drug arrests, and conducted many surveillances; (4) the officer knew how drug deals were made in the area; (5) while sitting in his vehicle, the defendant made a furtive motion as if he was trying to hide something under his seat; (6) the officer knew the meaning of this motion; and (7) the officer was away from the protection of his police cruiser.

In attempting to apply *Bobo* to varying fact patterns, the appellate courts of this state have held that the mere presence of an individual or his vehicle in a "drug area" is insufficient, in and of itself, to establish a reasonable suspicion. See *State v. Jones* (1990), 70 Ohio App.3d 554, 591 N.E.2d 810; *State v. Paden* (Nov. 1, 1995), Pickaway App. No. 94CA25, unreported, 1995 WL 650166.

At least one appellate court has extended this analysis to situations in which the defendant is seen talking to other individuals in a drug area. In *State v. Fincher* (1991), 76 Ohio App.3d 721, 603 N.E.2d 329, the Eighth Appellate

District held that a stop had not been warranted when (1) the defendant was seen standing by a vehicle in a drug area and talking to its occupants, and (2) the defendant quickly walked away from the vehicle when he saw the officers approaching. The *Fincher* court emphasized that the mere fact that drug transactions sometimes occur when a pedestrian stands by a parked vehicle did not justify the stop.

In contrast to *Fincher,* other appellate courts have held that a reasonable suspicion does exist when the defendant's actions are consistent with the profile created by the analysis of the drug deals commonly transacted in that area. For example, in *State v. George* (Sept. 30, 1991), Stark App. No. CA–8519, unreported, 1991 WL 207941, the Fifth Appellate District held that the stop had been justified under the following facts: (1) the stop took place in an area where drug deals were made and where firearms were prevalent; (2) the officer had approximately three years of experience and had made other arrests in the area; (3) the officer knew how drug deals were made in the area; and (4) the officer saw the defendant standing with two other men with their heads bowed, a typical position for dealing in drugs. See, also, *State v. Jacobs* (May 31, 1995), Summit App. No. 16916, unreported, 1995 WL 324066.

Although this court is not entirely comfortable with the latitude expressed in *George,* we still believe that, as between *Fincher* and *George,* it is the latter which is more consistent with the Supreme Court precedent set out in *Bobo.* As was previously noted, the *Bobo* court specifically stated that the officer's knowledge as to how drug transactions are typically made in the area is, indeed, one factor which can be considered in reviewing the officer's actions. Moreover, nowhere in *Bobo* is it stated that the officer must actually see the criminal activity taking place. Instead, the drug deal can be reasonably inferred from the circumstances.

In the instant case, Patrolman Levicki testified at the suppression hearing that he had been a patrolman for four years, that he had conducted many surveillances similar to the one in this case, and that he had previously made arrests for possession of drugs. In relation to the Argonne Drive residence, Patrolman Levicki further testified that, over the past six months, a number of arrests for drugs had been made which stemmed from the residence, and that the department had received numerous complaints both from the neighbors and the owner that the residence was being used as a "crack" house. Patrolman Levicki stated that typically drug transactions occur when numerous vehicles come and go from a residence, especially at odd hours; when an occupant from a vehicle goes into the residence but stays for only a few minutes; and, finally, when the vehicle immediately leaves upon the return of the individual. Patrolman Levicki also testified that a succession of cars had repeated this particular procedure during his term of surveillance prior to appellant's arrest at 3:15 a.m.

■ Based upon the foregoing, Patrolman Levicki could readily infer that appellant's actions at the residence were consistent with the observations and conclusions of the informants that the house was, in fact, a crack house, and that appellant was one of many customers. Thus, this court concludes that the trial court did not err in finding that the facts of this case had supported a finding of reasonable suspicion of criminal activity. As a result, we agree that the initial stop of the Cadillac was lawful.

Notwithstanding the foregoing analysis, appellant further maintains under his sole assignment that the seized evidence should have been suppressed because the search (not the retrieval) of the pop can was improper. Specifically, appellant submits that the trial court erred in finding that the police officers had a reasonable belief that the driver of the vehicle had the authority to consent to the search of the can. Stated differently, he asserts that the state of the evidence was such that the officers could have reasonably believed only that the can belonged to him, and that his consent was, therefore, needed before the can itself could properly be searched.

■ Because the search of the pop can was performed without a warrant, it is deemed to be *per se* improper under the Fourth Amendment of the United States Constitution unless it falls within one of the few exceptions to the warrant requirement. See *State v. Sneed* (1992), 63 Ohio St.3d 3, 6, 584 N.E.2d 1160, 1164–1165. Accordingly, in order to avoid the application of the exclusionary rule in this case, the state had the burden of showing that one of the exceptions to the warrant requirement was applicable in this instance. See *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889.

■ One exception to the warrant requirement is the voluntary consent exception. In reviewing the parameters of this exception, the Supreme Court of Ohio has noted that a proper consent can be given by someone other than the defendant when the third party has common authority over the area sought to be searched. *Sneed*, citing *United States v. Matlock* (1974), 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242. The consent of a third party has typically been held to be valid in certain instances in which the defendant and the third party live together in a common area.

■ As both parties note, the United States Supreme Court has applied a "reasonable belief" standard for determining whether a police officer's reliance upon the consent of a third party was proper under particular circumstances. That is, before a trial court can conclude that a warrantless search was valid on the basis of a third-party consent, it must find that the facts of the case supported a reasonable belief on the part of the police officer that the third party had the authority to consent to the search.

In this case, appellant does not dispute that the evidence presented at the motion hearing supported the conclusion that Patrolman Levicki and the other officers had a reasonable belief that the driver of the vehicle had the authority to consent to a *general* search of the vehicle. Nevertheless, he contends that the evidence also demonstrated that the scope of this consent could not extend to the pop can because Patrolman Levicki admittedly knew that the can had been solely in appellant's possession.

In other contexts which we find to be analogous, the courts of this state have held that the scope of a proper warrantless search of a motor vehicle cannot be extended to passengers in the vehicle when there is no independent basis for the search of the person. For example, in *State v. Mitchell* (1993), 87 Ohio App.3d 484, 622 N.E.2d 680, the search of the vehicle was predicated upon the automobile exception to the warrant requirement, *i.e.*, the officers had probable cause to believe that the vehicle contained contraband. As part of the search, the police frisked a passenger and found drugs on his person. In concluding that the scope of the search had been too broad under the circumstances, the *Mitchell* court stated that the passenger's presence in the vehicle was not sufficient to warrant a search of his clothing, including his shoes.

In this case, Patrolman Levicki stated in his testimony that when he first saw appellant sitting in the front passenger seat of the vehicle, appellant was holding the pop can. Patrolman Levicki also testified that he saw appellant place the can in the location from which it was ultimately retrieved. Thus, the only evidence on this point before the trial court supported the conclusion that Patrolman Levicki had reason to believe that the can was appellant's.

From this, the trial court should have concluded that Patrolman Levicki and the other officers did not have a "reasonable" belief that the driver of the vehicle had the authority to consent to the search of the can. Stated differently, there was no evidence in the record supporting the conclusion that a reasonable person would have believed that the driver had possession of or control over the can.

Accordingly, in relation to the search of the pop can, this court concludes that the legal analysis of the trial court was flawed. Nevertheless, we further conclude that the search of the can should have been upheld on an independent basis. Specifically, we hold that the search of the pop can was proper because it was supported by independent probable cause.

Here, Patrolman Levicki observed appellant's nervous and furtive movements with the can, followed by his actual attempts to hide the can, first between the seat and the door and then between the crack of the split-bench. As part of his direct testimony, Patrolman Levicki testified as to the following:

"Q. * * * and he was moving it backwards like he was trying to put it behind him or something which it was just a soda can.

"He tried a couple times to put it down between, it looked like, between the door and the seat and it just kept moving around. He switched from hand to hand a couple of times. I just thought that was kind of odd at the time.

"Q. What did you see happen with the can ultimately?

"A. After probably about, no longer, this happened, this happened no longer than 15, 20 seconds, it just happened, moving around like trying to jam it somewhere. Then he reached over and palmed the top of the can, like he pushed down between his legs, like it was going in between two seats of a split-bench style car seat where the seat, the cushions meet, but there is a gap in between."

Moreover, Patrolman Levicki testified as to the following during cross-examination:

"A. * * * [I]t looked like he was trying to move the can around without actually moving his upper body."

Such furtive movements, when combined with the circumstances which led to the investigatory stop, were clearly sufficient to establish probable cause to search the pop can.

In *State v. Haynes* (July 19, 1996), Portage App. No. 95–P–0007, unreported, 1996 WL 649167, at 10, this court stated:

" * * * In our view, the record here supports a more expanded search * * * based on probable cause. ' * * * [O]bservations made by a police officer can ripen into probable cause to believe that the car contains the instrumentalities of a crime sufficient to justify the full warrantless search of the vehicle. * * *' (Citations omitted.) [*State v. Favors* (May 20, 1994), Lake App. No. 93–L–117, unreported,] at 2 (1995 [1994] WL 228173).

" ' "Probable cause" is defined as a reasonable ground of suspicion supported by facts and circumstances sufficiently strong in themselves to warrant a prudent person in believing an accused person had committed or was committing an offense. * * * Ohio courts have interpreted this definition to include the "totality" of facts and circumstances within a police officer's knowledge. * * *' (Citations omitted.) [*State v. Ratcliff* (1994), 95 Ohio App.3d 199, 205, 642 N.E.2d 31, 34–35.]"

In both the hearing on the motion to suppress and this appeal, it is clear that the facts are not at issue. Rather, it is the legal conclusion to be drawn from those uncontroverted facts that is challenged by appellant. While we agree that those facts could not lead to a reasonable belief of consent to search the pop can,

we find that error to be harmless. The uncontested testimony established that independent probable cause was established to search the pop can.

Pursuant to the foregoing discussion, although the trial court's logic was in error, its conclusion was correct in finding that the search of the can itself had been proper. *Yemma.*

Thus, the trial court was correct in denying appellant's motion to suppress. Accordingly, appellant's sole assignment of error is without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

NADER and CACIOPPO, JJ., concur.

MARY CACIOPPO, J., retired, of the Ninth Appellate District, sitting by assignment.