JOURNAL ENTRY AND OPINION
Plaintiff-appellant City of Cleveland appeals from the trial court's decision to grant the motion to suppress filed by defendant-appellee Stanley Trzebuckowski. On August 31, 2000, at 12:56 a.m., the appellee was arrested for and charged with driving under the influence of alcohol in violation of Codified Ordinances of Cleveland, Section 433.01(A)(1); speeding in violation of Codified Ordinances of Cleveland, Section 433.03; driver's failure to wear a seatbelt in violation of Codified Ordinances of Cleveland, Section 437.27B1; turning right on red in violation of Codified Ordinances of Cleveland, Section 413.03; and weaving in violation of Codified Ordinances of Cleveland, Section 431.34B. The trial court granted the appellee's motion to suppress and motion to dismiss the violation for driving under the influence of alcohol (DUI). The city prosecutor has timely filed this appeal.
At the hearing on the motion to suppress, Cleveland Police Officer Laura Soeder testified that in the early morning hours she observed the appellee's vehicle go left of center twice. She observed the vehicle weave over the center line and proceed all the way to the right lane, enter the curb lane, and then proceed through a red light marked no turn on red. The appellee was speeding and was stopped by Officer Soeder and her partner Darin Glencer on Pearl Road near Selzer. As officer Soeder approached the passenger side of the appellee's vehicle, she noticed an open container of beer standing upright. Soeder also observed the appellee perform the finger-to-nose and one-leg stand sobriety tests and testified that these two tests were administered in accordance with the standard procedures taught at the police academy. The appellee failed the two sobriety tests (T. 10).
Cleveland Police Officer Darrin Glencer testified that he and officer Soeder first observed the appellee's vehicle near Broadview and Valley Roads. The appellee was traveling westbound on Broadview approaching Pearl Road. The officers observed the appellee drive left of center twice. At the intersection of Broadview and Pearl Roads, Officer Glencer stated that the appellee's vehicle entered the left turn lane, with the left turn signal on, and then cross over two lanes to make a right-hand turn. The officers followed the appellee and found that he was traveling 38 m.p.h. in a 25 m.p.h. zone.
After the appellee was stopped, Officer Glencer requested his driver's license and proof of insurance. The smell of alcohol emanated from the appellee. At this point, officer Soeder notified Officer Glencer that there was an open container in the vehicle. The appellee admitted to drinking a "couple of beers" that evening. The appellee was asked to recite the alphabet and when so doing, he mumbled and had long pauses at points in the recitation. The appellee had to "really concentrate to get to W, X, Y, and Z." (T. 36.) Officer Glencer found this to be one possible indication that the appellee was under the influence of alcohol. The officer then made a request to the appellee to count backwards from 47 to 29. The results of this test furthered the officer's suspicions regarding the appellee's possible intoxication. The appellee was then asked to step out of his vehicle. The trial court sustained the appellee's objection to the use of this numerical test because the test is not one taught at the police academy.
Officer Glencer testified that he next administered the finger-to-nose test to the appellee in the exact manner he had been taught at the police academy. The appellee responded that he could not perform the test. Officer Glencer then inquired as to whether the appellee could perform the one-leg test. Once again, the test was administered to the appellee in the exact manner the officer had been taught at the police academy. The appellee was unable to adequately perform this test. The appellee needed support, he hopped, swayed, raised his arm, and was unable to hold up his foot.
Officer Glencer stated that when making an arrest for driving under the influence of alcohol he always waits until the last test is completed prior to making the final determination to arrest a suspect. After the appellee herein failed the one-foot stand test, he was Marandized by officer Glencer and placed under arrest.
Officer Glencer was questioned both on cross-examination and by the trial court regarding his decision to print his name and the names of the other two officers on the scene on the ticket instead of using a cursive signature. Officer Glencer testified that he normally prints his name on a ticket (T. 83). It is his practice to print both his name and the name of the other officers on the scene on a ticket for legibility purposes so that the clerk of courts may identify the officers involved. Officr Glencer testified that the printed name on this ticket was his signature (T. 45-46, 82).
At the conclusion of the hearing, the trial court found that there were errors in the administration of the sobriety tests. Officer Glencer administered the alphabet test while the appellee was still seated in his vehicle. The test should be given to a suspect after the suspect exits his vehicle. The trial court also indicated that she did not believe the open container of beer would still be standing upright if the appellee had been driving as the officers testified. The court found that officer Glencer's printed name on the ticket was not a signature as required under the traffic rules. The court concluded:
 . . . . so for the reasons I've laid out — because I feel at least two of the four sobriety tests are suspect, I am going to grant the suppression; and because the probable cause was the result of the tests administered to the defendant — I am going to grant the motion to dismiss.
(T. 101.) The record reveals that the journal entry dismissed all of the charges against the appellee based upon a defective complaint.
The appellant asserts two assignments of error.
The first assignment of error:
 THE TRIAL COURT ERRED IN FINDING THAT THE UNIFORM TRAFFIC TICKET CHARGING DUI WAS DEFECTIVE BASED ON FACT THAT OFFICER GLENCER DID NOT SIGN HIS NAME IN CURSIVE.
The appellant asserts that the printed name of the arresting officer on the ticket given to the appellee for driving under the influence of alcohol was sufficient to complete a uniform traffic ticket and that there is no requirement that such signature be written in cursive.
The Ohio Supreme Court promulgated the Traffic Rules "to secure the fair, impartial, speedy and sure administration of justice, simplicity and uniformity in procedure, and the elimination of unjustifiable expense and delay." Traf.R. 1(B). Solon v. Knotek (Nov. 2, 2000), Cuyahoga App. No. 77563, unreported. The filing of a valid complaint is a necessary prerequisite to a court's acquiring jurisdiction. In traffic cases, the Uniform Traffic Ticket as set forth in the Ohio Traffic Rules Appendix is the mandatory form that serves as the complaint and summons in all Ohio courts. Cleveland v. Castelli (Nov. 21, 1996), Cuyahoga App. No. 70540, unreported. Traf.R. 3(E), infra, provides that the law enforcement officer issuing the ticket must sign the ticket. A ticket devoid of such signature does not satisfy the minimum requirements of a valid complaint. Castelli, supra. Conversely, where a traffic ticket is signed, it is not void. State v. Wilson (1995), 102 Ohio App.3d 1.
In the case sub judice, the question has been posed as to whether or not the officer's printed name satisfies the minimum requirements of a valid complaint. We note that this very issue was disposed of by this court in Cleveland v. Higgins (Oct. 26, 1989), Cuyahoga App. No. 56016, unreported, where this court noted:
 Appellant argues that the Cleveland police officers failed to sign the traffic citations as required by statute, thus divesting the trial court of jurisdiction.
 The officers affixed their names to the six citations in printed rather than cursive form.
Traf. R. 3(E) provides in pertinent part:
 (E) Duty of Law Enforcement Officer. A law enforcement officer who issues a ticket shall complete and sign the ticket, serve a copy of the completed ticket upon the defendant and, without unnecessary delay, file the court copy with the court.
 In this case, the court properly recognized that the citations were signed and properly authenticated. The trial court did not err by concluding that it had jurisdiction and denying appellant's motion to dismiss.
We see no reason to deviate from the decision in Higgins. The trial court here erred in its conclusion that an officer's printed name is not his signature.
The appellant's first assignment of error is well taken.
The second assignment of error:
 THE TRIAL COURT ERRED BY SUPPRESSING RESULTS OF TWO FIELD SOBRIETY TESTS AND THEN CONCLUDING THAT FURTHER FIELD SOBRIETY TESTS GIVEN WERE STRICKEN AS IF THEY WERE FRUITS OF THE POISONOUS TREE.
The appellant argues that the trial court erred in ignoring the results of the one-leg stand and the finger-to-nose sobriety tests. The appellant also asserts that even if the court were correct in suppressing two of the four field sobriety tests, there was still probable cause to arrest the appellee for driving under the influence of alcohol.
An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by competent, credible evidence. Statev. Young (Dec. 31, 2001), Warren App. No.CA2001-03-019, unreported, citing to State v. Retherford (1994), 93 Ohio App.3d 586, 592. When considering a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of witnesses and the weight of the evidence. State v. Mills (1992), 62 Ohio St.3d 357, 366. Relying on the trial court's findings, the appellate court determines, "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995), 100 Ohio App.3d 688,691.
Recently, the Ohio Supreme Court has addressed the issue of the need for standardization of field sobriety tests. In State v. Homan (2000),89 Ohio St.3d 421, at syllabus one, the court held:
 In order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures.
In the body of the Homan opinion, the court held that the standard for determining whether the police have probable cause to arrest an individual for DUI, is whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. Beck v. Ohio (1964),379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145; State v. Timson
(1974), 38 Ohio St.2d 122, 127. The Homan Court determined that the test for making this decision is one of the totality of facts and circumstances surrounding the arrest. Homan, citing to State v. Miller
(1997), 117 Ohio App.3d 750, 761, and State v. Brandenburg (1987),41 Ohio App.3d 109, 111.
In Homan, the Supreme Court also determined that while field sobriety tests must be administered in strict compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where the test results must be excluded for lack of strict compliance. Id. at 16. The court found it sufficient that prior to stopping the vehicle, the officer had observed erratic driving. Upon stopping the defendant's vehicle, the appellee's eyes were observed to be red and glassy and the defendant's breath smelled of alcohol. The defendant also admitted to the arresting officer that he had been consuming alcoholic beverages. The court found that the totality of these facts and circumstances amply supported the officer's decision to place the defendant under arrest. See also Cleveland v.Gibson (Dec. 6, 2001), Cuyahoga App. No. 79657, unreported.
In this case, this court has no basis to find that the trial court erred in suppressing the first two field sobriety tests. Under Homan,supra, the sobriety tests must be administered to strictly comply with existing standards. The trial court here made a factual determination that this standard was not met. However, the trial court did err in failing to apply the Homan test to the two subsequent field sobriety tests. The trial court also failed to consider that under Homan, the officers had probable cause to arrest the appellant for DUI even absent any field sobriety test. The appellee was observed driving erratically, had the smell of alcohol on his breath, admitted that he had been drinking, and had an open container of beer in the vehicle. Even when considering that the trial court did not believe the open container was standing upright, the trial court did not make any finding that the open container did not exist. This evidence meets the totality of the circumstances test set forth in Homan, supra.
The appellant's second assignment of error is sustained.
Judgment reversed and remanded.
This cause is reversed and remanded.
It is, therefore, considered that said appellant recover of said appellee its costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
PATRICIA A. BLACKMON, J., and FRANK D. CELEBREZZE, JR., J., CONCUR.