DECISION AND JUDGMENT ENTRY
{¶ 1} The Marietta Municipal Court found Norma C. Menking guilty of operating a motor vehicle while under the influence of alcohol ("OMVI"). Menking appeals the court's decision to deny her motion to suppress. Menking contends that the trial court should not have considered her performance on the alphabet test when evaluating her motion to suppress, because the police officer did not administer the test in strict compliance with the standards adopted by the National Highway Traffic Safety Administration ("NHTSA"). Because the alphabet test is not a standardized NHTSA test, we disagree. Menking also contends that the officer lacked probable cause to arrest her based on the totality of circumstances. Because the record contains some competent, credible evidence upon which the trial court could have concluded that a reasonably prudent person would suspect that Menking was driving under the influence of alcohol, we disagree. Accordingly, we affirm the judgment of the trial court.
 I. {¶ 2} At approximately 2:30 a.m. on January 9, 2002, Belpre City police officer Terry Williams observed Menking driving her station wagon with an expired registration sticker on the license plate. Officer Williams did not observe Menking drive erratically or commit any moving violations. After running a license check and determining that the vehicle registration actually was expired, Officer Williams stopped Menking.
 {¶ 3} Menking cooperated with Officer Williams. She did not fumble with her wallet. Officer Williams could not recall whether she had bloodshot eyes or slurred her speech. However, as Officer Williams spoke with Menking, he noticed a moderate odor of alcohol. Menking admitted to Officer Williams that she consumed four beers.
 {¶ 4} Officer Williams administered a portable breath test, which checks for the presence of alcohol. The test revealed that Menking had consumed alcohol. Officer Williams then conducted four field sobriety tests: one standardized test from the NHTSA manual and three non-standardized "techniques" described in the NHTSA manual. After the tests, Officer Williams arrested Menking for OMVI.
 {¶ 5} Menking pled not guilty and filed a motion to suppress. At the hearing on the motion, Menking introduced the NHTSA manual into evidence. Officer Williams testified that he did not strictly comply with the instructions set forth in the NHTSA manual for conducting the walk and turn test, a standardized field sobriety test. Officer Williams also testified that Menking informed him she is missing one toe, which affects her balance. As a result, Officer Williams did not administer the other two NHTSA standardized field sobriety tests. Instead, Officer Williams asked Menking to perform three non-standardized tests, referred to as "techniques" in the NHTSA manual. The manual states that the techniques are "not as reliable as the standardized field sobriety tests but they can be still be useful for obtaining evidence of impairment."
 {¶ 6} Officer Williams instructed Menking on the non-standardized finger count test in accordance with the instructions recommended by the NHTSA. Menking made one mistake on that test, but the court considered that mistake minor and found that she "passed" that test. Menking also performed relatively well on the finger-to-nose test, a non-standardized test that is not contained in the NHTSA manual.
 {¶ 7} Officer Williams also administered the alphabet test, a non-standardized test that is described in the NHTSA manual. Officer Williams directed Menking to stand with her feet together, her hands at her sides, her head titled back, and her eyes closed. The NHTSA manual does not recommend any of those instructions. The NHTSA manual recommends that the officer instruct the subject to recite the alphabet, starting with a letter other than "A" and ending with a letter other than "Z." Officer Williams instructed Menking to recite the entire alphabet. Menking recited the alphabet from "A" through "T," but then said "Y, V," opened her eyes, and lost her balance.
 {¶ 8} The trial court found that Officer Williams did not administer the alphabet test in accordance with NHTSA procedures, but also found that the alphabet test is not a standardized test. Therefore, the trial court determined that it could consider Menking's performance on the test for purposes of determining whether Officer Williams had probable cause to arrest Menking. The trial court found, given the totality of circumstances including the time of day, the admission to consuming four beers, the positive breath test, the odor of alcohol, and the performance on the alphabet test, that Officer Williams possessed probable cause to believe Menking was intoxicated.
 {¶ 9} Menking pled no contest to one count of first-offense OMVI, a violation of Belpre City Ordinance 333.01(A)(1) and (3). The trial court entered a judgment of conviction and sentenced Menking accordingly. Menking appeals, asserting the following single assignment of error: "The trial court erred when it denied Norma Menking's motion to suppress evidence obtained from a traffic stop."
 II. {¶ 10} Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. State v. McNamara
(1997), 124 Ohio App.3d 706, citing United States v. Martinez (C.A. 11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and evaluate witness credibility. State v.Carter (1995), 72 Ohio St.3d 545, 552. We must accept a trial court's factual findings if they are supported by competent, credible evidence.State v. Guysinger (1993), 86 Ohio App.3d 592, 594. We then apply the factual findings to the law regarding suppression of evidence. Finally, we review the trial court's application of the law to those facts under the de novo standard of review. State v. Anderson (1995),100 Ohio App.3d 688, 691.
 {¶ 11} The standard for determining whether the police have probable cause to arrest an individual for DUI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. State v. Homan, 89 Ohio St.3d 421, 427, 2000-Ohio-212, citingBeck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142,145; State v. Timson (1974), 38 Ohio St.2d 122, 127. To make this determination, the trial court should consider the totality of facts and circumstances surrounding the arrest. Homan, citing State v. Miller
(1997), 117 Ohio App.3d 750, 761, and State v. Brandenburg (1987),41 Ohio App.3d 109.
 {¶ 12} Under Ohio law, "[i]n order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." Homan at paragraph one of the syllabus. However, "[w]hile field sobriety tests must be administered in strict compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where * * * the test results must be excluded for lack of strict compliance."Homan at 427.
 {¶ 13} The Homan Court excluded the three standardized NHTSA field sobriety tests because the officer did not strictly comply with NHTSA instructions for administering the tests. Quoting from the NHTSA manual, the Supreme Court noted "if any one of the standardized field sobriety test elements is changed, the validity is compromised." Homan at 425. However, the Court nonetheless found sufficient probable cause in Homan
based upon the facts that the defendant admitted to drinking, and the officer observed erratic driving, red and glassy eyes, and an odor of alcohol on the defendant's breath.
 {¶ 14} In construing Homan, courts have applied the strict compliance exclusionary rule to standardized NHTSA tests, but not to non-standardized NHSTA tests. State v. Walker, 149 Ohio App.3d 296,2002-Ohio-4362; Rocky River v. Horvath (Apr. 11, 2002), Cuyahoga App. No. 79997. Based upon the "totality of circumstances" standard articulated by the Supreme Court, non-standardized NHSTA tests are useful sources of information regarding the suspect's sobriety. "If circumstances dictate that methods other than strictly standardized tests must be used in determining whether a driver is under the influence of alcohol, then an officer should be able to use nonstandardized tests that, based upon his experience, can indicate impairment by alcohol."Walker at ¶ 14.
 {¶ 15} In this case, Officer Williams identified specific circumstances, namely, Menking's statement that her missing toe causes balance problems, which dictated that he not use the NHTSA standardized field sobriety tests. Therefore, Officer Williams used non-standardized tests as a technique to determine her sobriety. No law requires law enforcement officers to administer non-standardized tests in strict compliance with NHTSA recommendations. Accordingly, we find that the trial court did not err in considering Menking's performance on the alphabet test when ruling on the motion to suppress.
 {¶ 16} The totality of circumstances in this case include the time of day, the moderate odor of alcohol on Menking's breath, Menking's admission to consuming four beers, Menking's inability to keep her balance and correctly or completely recite the alphabet, and the positive result from the portable breath test. We find that these facts and circumstances constitute some competent, credible evidence that Officer Williams had sufficient information, derived from a reasonably trustworthy source, which could cause a prudent person to believe that Menking was driving while under the influence of alcohol.
 {¶ 17} In conclusion, the trial court did not err in denying Menking's motion to suppress. The court properly considered evidence regarding Menking's performance on the alphabet test, and the record contains some competent, credible evidence supporting the court's conclusion that Officer Williams had probable cause to arrest Menking. Accordingly, we overrule Menking's assignment of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec.2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. and Abele, J.: Concur in Judgment and Opinion.