[Cite as *State v. Muster*, 2014-Ohio-689.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney |
| | : | Hon. Craig R. Baldwin |
| -vs- | : | |
| | : | |
| NEAL MUSTER | : | Case No. 2013CA00118 |
| | : | |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Canton Municipal
                             Court, Case No. 2013 TRC 1360


JUDGMENT:                    Affirmed


DATE OF JUDGMENT:            February 24, 2014


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

TASHA FORCHIONE                           GEORGE URBAN
Assistant Prosecuting Attorney            116 Cleveland Ave. NW
218 Cleveland Ave. SW                     Suite 808
P.O. Box 24218                            Canton, OH 44702
Canton, OH 44701-4218

*Baldwin, J.*

{¶1}    Appellant Neal Muster appeals a judgment of the Canton Municipal Court convicting him of operating a vehicle while under the influence of alcohol (R.C. 4511.191(A)(1)(a), (2)(b)).[1]  Appellee is the State of Ohio.

### STATEMENT OF FACTS AND CASE

{¶2}    On March 12, 2013, Donald Ballard called 911 while traveling on Route 618 to report an unsafe driver.  Ballard was following a vehicle, which he described as a gray Mercury Marquis or Ford Crown Vic, with a possible license plate number of FET5698.  Ballard indicated that he wasn't sure of the license plate number, but did not want to get closer to the vehicle in question.  He observed the vehicle run a red light, speed up and slow down, swerve, and almost cause a crash.  During the call, Ballard reported that the driver almost ran into another car and was swerving all over the road, randomly hitting the brakes.  Ballard reported that the car was heading into Hartville.  Ballard told the dispatcher that the driver was possibly drunk, or something was wrong.

{¶3}    Officer John Pilla of the Hartville police received information from Uniontown police that a possible drunk driver was heading into his jurisdiction.  He spotted appellant at 8:25 p.m. in the 1200 block of West Maple.  Appellant was driving a dark Mercury with license plate number of FOG5698.  The vehicle pulled into the parking lot of Grinder's restaurant without signaling.

{¶4}    Officer Pilla approached the vehicle.  Appellant would not make eye contact with him and was chewing a wad of gum.  Appellant told Pilla that he was following his GPS to meet his girlfriend at the West Maple Café.  He only knew her from

---

[1] Appellant was also convicted of failing to signal before changing course (R.C.4511.39) and open container (R.C. 4301.62), but does not assign error to these convictions.

the internet, and this was to be their first meeting. He did not know what city he was in or what city he was to meet her in; he was merely following his GPS.

{¶5} Officer Anthony Higgins of the Hartville Police Department arrived to assist Pilla. Pilla told Higgins that he didn't smell alcohol, but he had a cold. Higgins approached appellant, who was still seated in the vehicle, to ask for his registration. Appellant would not make eye contact with Higgins, and Higgins noted a strong odor of cigarettes and a minty smell. Appellant was vigorously chewing gum. From his training, Higgins knew that gum is often used as a masking agent for the smell of alcohol. Evasive behavior is another sign officers are taught to look for when investigating a possible DUI.

{¶6} The officers discussed between themselves whether they believed appellant was drunk, or just odd. Pilla decided to give appellant a warning for the turn signal violation. While Pilla explained to appellant that he was giving him a warning and helped appellant figure out where he was to meet his girlfriend, Higgins noticed a long skinny brown paper bag commonly used to carry bottles of liquor on the back seat. When asked about the bag, appellant would not look at it and he would not allow the officers to look inside the bag.

{¶7} After appellant refused to show the officers the bag, they asked him to step out of the car. When appellant was outside of the car and in closer contact with the officers, both Pilla and Higgins noticed that appellant had a strong odor of alcohol about him and that his eyes were bloodshot and glassy. Appellant refused field sobriety testing. Officers then placed him under arrest for operating a vehicle while under the influence of alcohol.

{¶8}    Appellant was taken to the Hartville police station. He refused to submit to chemical testing. While calling for a ride, officers overheard appellant say that he was in Boston Heights, although they had earlier identified themselves to him as Hartville police officers. Officers conducted an inventory search of the vehicle and found a vodka bottle under the front passenger seat, containing only a drop of liquid.

{¶9}    Appellant was charged with operating a motor vehicle while intoxicated in violation of R. C. 4511.19(A)(1)(a) and R.C. 4511.19(B)(2)(b), failing to signal before changing course (R.C. 4511.39) and open container (R.C. 4301.62). Appellant filed a motion to suppress, arguing that the officers did not have a reasonable suspicion of criminal activity to ask appellant to step out of the vehicle, and that the officers did not have probable cause to arrest him for OVI. After a hearing, the trial court overruled the motion.

{¶10}   The case proceeded to jury trial in the Canton Municipal Court. Following trial, the jury found appellant guilty of both counts of OVI and he was convicted. The court merged the two counts for sentencing, and sentenced appellant to 180 days incarceration with all but 20 suspended upon condition of good behavior for two years. He was fined $525.00. In lieu of the suspended jail term he was ordered to perform 50 hours of community service and to sign up for Quest's multiple offender treatment program and comply with the program's recommendations. The court found him guilty of the remaining two charges and ordered him to pay court costs.

{¶11}   Appellant assigns two errors on appeal:

{¶12} "I. THE APPELLANT'S CONVICTION FOR ONE COUNT OF OPERATING A VEHICLE IMPAIRED IN VIOLATION OF R.C. 4511.19 WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶13} "II. THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANT'S MOTION TO SUPPRESS."

I.

{¶14} Appellant argues that his conviction is against the manifest weight and sufficiency of the evidence.

{¶15} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶16} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶17} Appellant was convicted of violating R.C. 4511.19(A)(1)(a) and (2)(b):

{¶18} "(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:

{¶19} "(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.

{¶20} "(2) No person who, within twenty years of the conduct described in division (A)(2)(a) of this section, previously has been convicted of or pleaded guilty to a violation of this division, a violation of division (A)(1) or (B) of this section, or any other equivalent offense shall do both of the following:

{¶21} "(a) Operate any vehicle, streetcar, or trackless trolley within this state while under the influence of alcohol, a drug of abuse, or a combination of them;

{¶22} "(b) Subsequent to being arrested for operating the vehicle, streetcar, or trackless trolley as described in division (A)(2)(a) of this section, being asked by a law enforcement officer to submit to a chemical test or tests under section 4511.191 of the Revised Code, and being advised by the officer in accordance with section 4511.192 of the Revised Code of the consequences of the person's refusal or submission to the test or tests, refuse to submit to the test or tests."

{¶23} Appellant argues that there was no indication that he was appreciably impaired, or under the influence of alcohol to the point that he was unable to operate a motor vehicle.

{¶24} Donald Ballard testified that he observed a vehicle run a red light, speed up and slow down, swerve, and almost cause a crash. He reported to police upon calling 911 that he believed the driver was drunk, or something was wrong with the driver. The vehicle he described was similar in color and model to the vehicle driven by

appellant, and the car reported by Ballard was heading in the direction in which police ultimately caught up to appellant's vehicle. Further, although Ballard was afraid to get too close to the vehicle due to its dangerous driving, he was able from a distance to guess at a license plate number of FET5698, very similar to appellant's number of FOG5698.

{¶25} Officer John Pilla testified that he saw appellant turn into Grinder's without using a turn signal. When he spoke to appellant, appellant would not make eye contact with him and was chewing gum. Appellant was relying on his GPS to guide him to a location where he was to meet his girlfriend, but he did not know what city he was traveling to or what city he was in at the time of the stop. Officer Higgins also noted that appellant would not make eye contact with him and was chewing a wad of gum with a strong mint smell. He also noted a strong cigarette odor. Officer Higgins later noticed an empty long skinny paper bag on the backseat of the vehicle, of the type usually used to carry liquor bottles. When asked what was in the bag, appellant would not allow officers to see the bag and did not turn to look at the bag. After appellant stepped out of the car, officers noticed a strong odor of alcohol about appellant, and appellant's eyes were bloodshot and glassy. After being arrested by Hartville police officers and taken to the Hartville police station, appellant told a person he telephoned for a ride that he was in Boston Heights. Upon searching the vehicle pursuant to an inventory search, officers found a nearly empty Vodka bottle under the front passenger seat.

{¶26} Viewing this evidence in a light most favorable to the State, a rational trier of fact could have found that appellant was operating a motor vehicle while under the

influence of alcohol. Further, the judgment is not against the manifest weight of the evidence.

{¶27} The first assignment of error is overruled.


II.

{¶28} Appellant argues that the court erred in overruling his motion to suppress. He argues that the officers did not have a reasonable suspicion of criminal activity to justify detaining him and asking him to step from the vehicle after deciding to let him go with a warning. Further, he argues they did not have probable cause to arrest him.

{¶29} Appellant relies on *State v. Robinette*, 80 Ohio St. 3d 234, 685 N.E.2d 762 (1997), in which the Ohio Supreme Court held, "When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure." *Id.* at paragraph one of the syllabus. However, the detention of a stopped driver may continue beyond this time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop. *State v. Coniglio*, 185 Ohio App. 3d 157, 923 N.E.2d 646, 2009-Ohio-6087, ¶11.

{¶30} In the instant case, officers had information from the Uniontown Police Department that a vehicle, closely matching appellant's in color, make and model, and

license plate number, was observed by another driver running a red light, swerving, speeding up and slowing down, and nearly causing an accident. Officer Pilla saw appellant turn into Grinder's without using a turn signal. Appellant would not make eye contact with the officers and was chewing gum. He was not sure where he was or where he was going, but was only aware that he was following his GPS to meet a girl he knew from the internet. The officers discussed whether appellant was drunk, and initially determined that he was not drunk. However, while Officer Pilla was giving appellant a warning and helping him with directions to meet his girlfriend, Officer Higgins spotted a paper bag on the backseat of the car of the size and type normally used to carry a bottle of liquor, and the bottle had a wet spot on the bottom. Appellant would not allow officers to look in the bag, and did not turn around in the seat to look at the bag.

{¶31} At this point the officers were aware of the tip concerning appellant's dangerous driving. Pilla saw appellant turn without using a signal, and appellant's behavior was evasive throughout the encounter with police. He was chewing gum, which the officers knew to be a masking agent. All of these facts, coupled with their observation of the bag and appellant's continued evasive behavior toward them concerning the bag, gave the officers a reasonable suspicion of criminal activity to ask appellant to step from the vehicle to attempt to perform field sobriety tests.

{¶32} The legal standard for determining whether the police had probable cause to arrest an individual for OVI is whether, "at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was

driving under the influence." *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952(2000); *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142(1964). The arrest merely has to be supported by the arresting officer's observations of indicia of alcohol consumption and operation of a motor vehicle while under the influence of alcohol. *State v. Van Fossen*, 19 Ohio App.3d 281, 484 N.E.2d 191 (1984). In making this determination, the trial court must examine the totality of facts and circumstances surrounding the arrest. See *State v. Miller*, 117 Ohio App.3d 750, 761, 691 N.E.2d 703(1997); *State v. Brandenburg*, 41 Ohio App.3d 109, 111, 534 N.E.2d 906 (1987).

{¶33} In addition to the facts concerning appellant's driving and behavior as discussed above, which gave the officers a reasonable suspicion that appellant was driving under the influence of alcohol to justify detaining appellant to ask him to perform field sobriety tests, after appellant stepped from the vehicle both officers noted a strong odor of alcohol about appellant and observed that his eyes were bloodshot and glassy. While appellant questions the credibility of the officers, in his findings from the bench following the suppression hearing, the trial court specifically finds both officers' testimony to be credible. Supp. Tr. 79. The trial court did not err in finding the officers had probable cause to believe appellant was under the influence based on all the information they had concerning his driving, their observations of his evasive behavior toward them and use of mint gum as a possible masking agent, his confusion as to what city he was in and in what city he was to meet his date, an empty bag with a wet bottom of a type normally used to carry a liquor, a strong odor of alcohol about appellant, and bloodshot and glassy eyes.

{¶34}   The second assignment of error is overruled.  The judgment of the Canton

Municipal Court is affirmed.  Costs are assessed to appellant.

By: Baldwin, J.

Hoffman, P.J. and

Delaney, J. concur.