[Cite as *Highland Hills v. Nicholson*, 2014-Ohio-4671.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   100577

---

# VILLAGE OF HIGHLAND HILLS

### PLAINTIFF-APPELLEE

vs.

# LANDON NICHOLSON

### DEFENDANT-APPELLANT

---

## JUDGMENT:
## REVERSED AND REMANDED

---

Criminal Appeal from the
Bedford Municipal Court
Case No. 13 TRC 02393

**BEFORE:**   Boyle, A.J., S. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:**   October 23, 2014

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY:   Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

Ross S. Cirincione
Law Director
City of Bedford Heights
Castleton Building
5306 Transportation Boulevard
Garfield Heights, Ohio   44125

Donald C. Williams
1370 Ontario Street
Suite 330
Cleveland, Ohio   44113

MARY J. BOYLE, A.J.:

{¶1} Defendant-appellant, Landon Nicholson, appeals his convictions for operating a vehicle while under the influence ("OVI"), not having an operator's licence for a motorcycle, having illegal plates, and speeding. He raises the following three assignments of error for our review:

> 1. Appellant was denied his right to counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution.
>
> 2. The trial court erred and violated Landon Nicholson's due process right to a fair trial when it denied Nicholson a continuance even though the village had not provided him with full discovery.
>
> 3. Landon Nicholson's OVI conviction is not supported by legally sufficient evidence as required by state and federal due process rights.

{¶2} Finding merit to his first assignment of error, we vacate Nicholson's convictions and remand the matter for further proceedings.

Procedural History and Factual Background

{¶3} On April 18, 2013, Nicholson was charged by complaint in Bedford Municipal Court on two counts of OVI in violation of R.C. 4511.19(A)(1)(a) ("under the influence") and (d) (breath alcohol content ("BAC") over .08), and several traffic violations, including no operator's license in violation of Highland Hills Codified Ordinance ("HHCO") 335.01(A) (for not having a motorcycle endorsement), illegal plates in violation of HHCO 335.11, speeding in violation of HHCO 333.03, and reckless operation in violation of HHCO 333.09. Nicholson pleaded not guilty to the charges and his case was assigned to Judge Brian Melling. Nicholson was also declared indigent and

was appointed counsel.

{¶4} Nicholson's counsel moved to suppress evidence on June 10, 2013. The motion was set for hearing on July 23, 2013. On July 23, Visiting Judge Joy Freda held a hearing. At the hearing, the judge discussed a plea deal that had been offered to Nicholson at a prior pretrial, where the OVI for BAC being over .08 would be dismissed and the remaining OVI would be amended to physical control. As part of the plea, Nicholson's court costs would be reduced from $1,000 to $650, and he would be sentenced to 30 days in jail, with 27 days suspended. Also as part of the plea deal, Nicholson would plead guilty to speeding, but the remaining counts would be dismissed.

{¶5} At the hearing, however, Nicholson informed the judge that he wanted to go to trial. Nicholson explained, "I would rather present myself in personal FASA. I'll represent myself. I don't want this guy representing me. That's just crazy. I would rather take it to trial." Nicholson further stated that his attorney had been talking to him, but "all he's giving me is promises and I'm not — I'm not happy with that." Nicholson told the judge that he told his attorney that he wanted to go to trial, but his attorney said, "he don't do trials."

{¶6} The judge then told Nicholson that he had to file a motion with the court, directing his motion to Judge Melling, and indicating why he wanted to represent himself and why he believed he was qualified to do it. The judge removed appointed counsel from the case and set trial for September 24, 2013.

{¶7} Nicholson then requested "complete discovery" from the prosecutor. The

judge gave Nicholson a copy of the police report, but told him that he would receive full discovery if he first filed his motion to represent himself and the assigned judge permitted him to "go forward without the benefit of counsel."

{¶8} Nicholson never filed a motion to represent himself. The original trial date was continued at the request of the prosecutor. The trial was then set for October 8, 2013.

{¶9} A bench trial was held on October 8, before Judge Harry Jacobs. At the beginning of the trial, Nicholson informed the judge that he had never received the dashboard video. The prosecutor informed the judge that there was no dashboard video. At that point, Nicholson requested a continuance so that he could call witnesses. The judge denied it and proceeded with trial.

{¶10} At the close of the evidence, the trial court found Nicholson guilty of the OVI ("under the influence"), having no operator's license for a motorcycle, having illegal plates, and speeding. The trial court dismissed the OVI count based on a BAC over .08, as well as the reckless operation. The trial court sentenced Nicholson to 180 days in jail, with 177 days suspended, and imposed a $1,000 fine. The trial court further suspended Nicholson's license for six months, and imposed a $150 fine and costs on each of the other traffic offenses. It is from this judgment that Nicholson appeals.

## Right to Self-Representation

{¶11} The Sixth and Fourteenth Amendments to the United States Constitution guarantee that persons brought to trial in any state or federal court must be afforded the

right to the assistance of counsel before they can be validly convicted and punished by imprisonment. *See Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). In some cases, defendants choose to forgo that right and represent their own interests before a criminal tribunal. That is also their right under the constitutions of this state and this nation. *State v. Reed*, 74 Ohio St.3d 534, 535, 660 N.E.2d 456 (1996), citing *Faretta v. California*, 422 U.S. 806, 821, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). "If a trial court denies the right to self-representation, when properly invoked, the denial is per se reversible error." *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, 772 N.E.2d 81, ¶ 32, citing *Reed*.

{¶12} When defendants manage their own defense, however, they relinquish, "as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta* at 834. For this reason, in order to represent themselves, defendants must "knowingly and intelligently" forgo those relinquished benefits. *Id.* at 835. Although defendants do not need to have the skill and experience of a lawyer to competently and intelligently choose self-representation, they should be made aware of the dangers and disadvantages of self-representation, so that the record establishes that they know what they are doing and their "choice is made with eyes open." *Id.*

{¶13} To establish an effective waiver of the right to counsel, the trial court must make a sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes that right. *State v. Gibson*, 45 Ohio St.2d 366, 345 N.E.2d 399

(1976), paragraph two of the syllabus.   Crim.R. 44(A) also provides that a defendant is entitled to counsel "unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel."   The United States Supreme Court, however, has not prescribed a precise formula or script that must be read to defendants who indicate that they desire to proceed without counsel. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 101. Instead, to be valid, a waiver of the right to counsel

> must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

*State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, 816 N.E.2d 227, ¶ 40.

{¶14} Further, Crim.R. 44 provides:

(A) Counsel in serious offenses. Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel.
(B) Counsel in petty offenses. Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel.

(C) Waiver of counsel. Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22.   In addition, in serious offense cases the waiver shall be in writing.

{¶15} Therefore, pursuant to Crim.R. 44 and 22, the waiver of counsel must take

place in open court, must be recorded, and in cases of serious offenses, the waiver must be in writing. *See State v. Mascaro*, 81 Ohio App.3d 214, 216, 610 N.E.2d 1031 (9th Dist.1991); *Garfield Hts. v. Brewer*, 17 Ohio App.3d 216, 217, 479 N.E.2d 309 (8th Dist.1984).

{¶16} A petty offense is defined as "a misdemeanor other than a serious offense." Crim.R. 2(D). A serious offense "means any felony, and any misdemeanor for which the penalty prescribed by law includes confinement for more than six months." Crim.R. 2(C). The two sections of OVI that Orr was charged with were misdemeanors of the first degree. R.C. 4511.19(G)(10)(a). Pursuant to R.C. 2929.21(B)(1), the term of imprisonment for a misdemeanor of the first degree is "not more than six months." Therefore, the OVI charges against Nicholson were both misdemeanor petty offenses and, thus, governed by Crim.R. 44(B) and (C).

{¶17} In this case, a visiting judge removed Nicholson's appointed counsel from the case and ordered Nicholson to file a motion with the court explaining why he wanted to represent himself and why he was qualified to do so. Nicholson never filed such motion. Nonetheless, that did not relieve the trial court of its duty to make a sufficient inquiry into the matter to determine whether Nicholson fully understood his right to counsel and knowingly, intelligently, and voluntarily waived that right.

{¶18} We therefore sustain Nicholson's first assignment of error, vacate his convictions, and remand for a new trial where the court must either appoint counsel to Nicholson or have the proper colloquy with him to ensure that he is voluntarily,

knowingly, and intelligently waiving his right to counsel. We note, however, that Nicholson cannot be retried on the offenses for which he was already acquitted: OVI due to BAC over .08 under R.C. 4511.19(A)(1)(d) and reckless operation under HHCO 333.09.

### Sufficiency of the Evidence

{¶19} Although Nicholson's second assignment of error (arguing that the trial court erred by not granting him a continuance) is moot, his third assignment of error regarding sufficiency of the evidence is not. Should we find merit in Nicholson's sufficiency argument, the state would be barred from retrying him on double jeopardy grounds. *State v. Freeman*, 138 Ohio App.3d 408, 424, 741 N.E.2d 566 (1st Dist.2000), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶20} In his third assignment of error, Nicholson argues that the city did not present sufficient evidence to convict him "of the generic OVI for 'driving under the influence.'" Specifically, Nicholson argues that the city did not provide sufficient evidence that he was "appreciably impaired" as a result of alcohol consumption.

{¶21} When an appellate court reviews a record upon a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶22}** Nicholson was convicted of R.C. 4511.19(A)(1)(a), which provides that "[n]o person shall operate any vehicle * * * if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."

**{¶23}** In determining whether the police had probable cause to arrest an individual for OVI, courts consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000), citing *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). "In making this determination, we will examine the 'totality' of facts and circumstances surrounding the arrest." *Id.*, citing *State v. Miller*, 117 Ohio App.3d 750, 761, 691 N.E.2d 703 (11th Dist.1997), and *State v. Brandenburg*, 41 Ohio App.3d 109, 111, 534 N.E.2d 906 (2d Dist.1987).

**{¶24}** Highland Hills police officer, Ray Hahalas, testified that on April 18, 2013, he was on Northfield Road in the village of Highland Hills when an "auxiliary" officer "noticed a motorcycle approaching what appeared to be a high rate of speed." Officer Hahalas stated that radar "confirmed that [Nicholson] was going 82 in a 40." Officer Hahalas activated his lights and stopped the motorcycle. Nicholson had a female passenger on the back of the motorcycle. Officer Hahalas approached Nicholson, and asked him for his driver's license. Officer Hahalas discovered that the license plates on the motorcycle "came back to a Buckeye Scooters," but the VIN number "came back to a

female who owned the bike, not Buckeye Scooters."   Officer Hahalas also discovered that Nicholson did not have a motorcycle endorsement on his driver's license.

{¶25} Upon approaching Nicholson a second time, Officer Hahalas testified that he smelled "a strong odor of alcohol" coming from Nicholson, but not from the female passenger.   Nicholson told Officer Hahalas that he did not drink, but Nicholson admitted that he had been drinking "a Chinese cooking wine called Shaoxing."   Based on the smell of alcohol, Officer Hahalas asked Nicholson if he would "like to perform any standardized field sobriety test[s]."   Nicholson replied that he would, but claimed that he had numerous medical conditions, which he explained is why he drinks the Shaoxing. Nicholson said that he had a broken foot and other health issues.   Officer Hahalas asked Nicholson if he still wanted to proceed with the testing; Nicholson replied that "he did want to proceed."

{¶26} Officer Hahalas testified that the first test that he performed was the horizontal gaze nystagmus ("HGN").   Officer Hahalas said that he performed all six tests of the HGN, including checking for equal tracking, checking for lack of smooth pursuit, and checking for onset of nystagmus at maximum deviation.   Officer Hahalas stated that Nicholson failed all six tests.

{¶27} Next, Officer Hahalas performed the walk-and-turn test.   Officer Hahalas said that he gave Nicholson instructions for the test and demonstrated how to perform the test.   Officer Hahalas explained that for this test, Nicholson was supposed to stand with his right foot in front of his left foot, with his hands down to his side.   Officer Hahalas

testified that Nicholson "was unable to do that." Nicholson "attempted it numerous times and would break that position and just stand normal." Officer Hahalas proceeded with his instructions, telling Nicholson to "take nine heel to toe steps forward keeping his hands down at his side, eyes down at his feet counting each step out loud." Officer Hahalas said that he then instructed Nicholson that when he reached his ninth step, he should "keep his front foot planted, take a series of small steps, turn around, take nine heel to toe steps back, again, keeping his hands down at his side, eyes down to his feet, and counting each step out loud." Officer Hahalas said that Nicholson did not pass the test.

{¶28} The third test that Officer Hahalas performed on Nicholson was the one-leg stand. Again, Officer Hahalas said that he gave instructions for the test and demonstrated how to perform the test. Officer Hahalas explained that for this test, Nicholson was supposed to raise one leg, whichever one he wanted, "approximately six inches off of the ground, keep his hands down to his side, look down at his toe, and count out loud by one thousands." Officer Hahalas said that Nicholson failed this test as well.

{¶29} Even though Nicholson stated that he had a broken foot, Officer Hahalas later observed Nicholson run back to the station when he was leaving because he forgot items. Officer Hahalas said that Nicholson's "foot possibly would not be broken."

{¶30} Officer Hahalas testified that he placed Nicholson under arrest "based on the totality of the circumstances and the manner in which he performed the tests."

{¶31} Nicholson argues that there was no evidence that his driving was impaired because of alcohol. But the police officer's observations of Nicholson during the field sobriety tests, i.e., that Nicholson failed all three of them, is evidence that Nicholson was intoxicated. Nicholson is not challenging the admissibility of the field sobriety tests (which to do so, it must be done in a motion to suppress).[1]

{¶32} Further, according to Officer Hahalas's testimony, Nicholson was traveling at an excessive rate of speed — 42 m.p.h. over the speed limit. This factor is one of the many factors an officer can consider when deciding whether to conduct field sobriety tests. *State v. Evans*, 127 Ohio App.3d 56, 56, 711 N.E.2d 761 (11th Dist.1998). In this context, however, especially given Nicholson's extremely high rate of speed on a motorcycle on Northfield Road, it is also evidence of impairment. Nicholson also admitted to Officer Hahalas that he had been drinking a Chinese cooking wine. These facts, along with the fact that the officer smelled a strong odor of alcohol emanating from Nicholson's person, as well as the fact that Nicholson failed the three field sobriety tests, amount to sufficient evidence that Nicholson was impaired from alcohol.

{¶33} Nicholson argues that Officer Hahalas's testimony regarding his performance on the field sobriety tests "offers little given that Nicholson advised the

---

[1]Nicholson's appointed counsel filed a motion to suppress. But when Judge Freda held a hearing on the date that the motion to suppress was scheduled to be heard, she believed — based on apparent conversations with appointed counsel and the prosecutor — that Nicholson was there that day to enter a plea. It was at that hearing that Nicholson then told Judge Freda that he wanted to represent himself. As a result, the motion to suppress that was filed by Nicholson's appointed counsel was never heard. There is nothing on the record that indicates this motion was withdrawn.

officer that 'he had a broken bone in his foot' and that he had other 'medical health problems.'" This argument, however, goes to manifest weight of the evidence and whether the officer's testimony should be believed, not whether there was sufficient evidence to convict him.

**{¶34}** Nicholson's third assignment of error is overruled.

**{¶35}** Judgment reversed. Convictions vacated. This matter is remanded to the trial court for further proceedings. We note, however, that Nicholson cannot be retried on the offenses for which he was acquitted: OVI due to BAC over .08 under R.C. 4511.19(A)(1)(d) and reckless operation under HHCO 333.09. It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Bedford Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, ADMINISTRATIVE JUDGE

SEAN C. GALLAGHER, J., and
MELODY J. STEWART, J., CONCUR